IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GABLE D. HALL,

                        Plaintiff,

v.

DAVID MELBY,

                        Defendant.

OPINION & ORDER

13-cv-385-jdp[1]

---

    Pro se plaintiff Gable D. Hall filed this complaint under 42 U.S.C. § 1983 contending that defendant Corrections Unit Supervisor David Melby acted with deliberate indifference to his medical needs by keeping him in a bunk that was too low, which aggravated plaintiff's back, hip, and knee problems. Currently before the court is defendant's motion for summary judgment.

    Before I turn to the merits of defendant's motion, I address plaintiff's motion for the court's assistance in recruiting him counsel. I must deny plaintiff's motion because he fails to show that he has made reasonable efforts to find a lawyer on his own and has been unsuccessful. *See Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). This court usually requires that a plaintiff submit letters from three lawyers who have turned down his request for representation, and plaintiff has not submitted any letters or even suggested that he has attempted to get help from outside counsel.

    Even had plaintiff complied with this first step, I would have denied the motion because plaintiff has not shown that "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Plaintiff does not fully comply with

---

[1] This case was reassigned to me pursuant to a May 16, 2014, administrative order. Dkt. 16.

this court's procedures for briefing summary judgment motions, but he does a reasonable job of setting forth the basis for his Eighth Amendment claim. Even plaintiff's version of the facts does not show that defendant acted with deliberate indifference toward his rights. Instead, the undisputed facts show that defendant appropriately deferred to medical personnel's treatment of plaintiff's health problems. Accordingly, I will deny plaintiff's motion for counsel and grant defendant's motion for summary judgment.

UNDISPUTED FACTS

The facts are taken from the parties' proposed findings of fact and the portions of plaintiff's medical records sent to the court. The following facts are undisputed, except where noted.[2]

Gable D. Hall is a prisoner in the Wisconsin Department of Corrections system. At the times relevant to this case, plaintiff was incarcerated at the Columbia Correctional Institution, located in Portage, Wisconsin. Defendant David Melby was employed by the DOC as a Corrections Unit Supervisor at CCI.

Plaintiff suffers from low back pain. On April 27, 2011, Plaintiff received "no floor or boat placement" and "thick mattress" restrictions for his continued complaints of back pain. Plaintiff states that he received this restriction after two and one-half weeks of sleeping on the

---

[2] Plaintiff did not, as required, support his proposed findings of fact with admissible evidence, such as an affidavit stating under penalty of perjury that plaintiff believes his facts to be true. However, I will include plaintiff's facts in this opinion because (1) it seems highly likely that, if prompted, plaintiff could submit sworn statements virtually identical to his stated facts; and (2) even assuming plaintiff's facts are true, summary judgment must be granted to defendant. Plaintiff has also filed surreply materials without first asking the court's permission to do so. I have reviewed these materials, but I will not include in this opinion facts from those materials, which do not contain anything that would change the outcome.

floor caused him hip, leg, and back pain. A "no floor or boat[3] placement" restriction may be given to inmates with medical concerns, like back or knee pain, to keep the inmate off the actual floor due to the difficulties inmates with these medical issues may have in getting to a standing position from the floor. A "thick mattress" restriction can be given to help alleviate pressure from back pain, as well as to provide the inmate with additional elevation to assist him to a standing position.[4]

CCI has three segregation units: Disciplinary Segregation 1 (DS-1), Disciplinary Segregation 2 (DS-2), and HU-7, which is on the Special Management Complex. DS-1 is normally where an inmate will go when he is first put into segregation, having behavioral problems, and/or placed into Temporary Lock-up (TLU) status, control status, or clinical observation status. DS-2 is a "step-down" unit, where an inmate will go when he has been in DS-1 and has demonstrated that he can maintain appropriate behaviors. HU-7 is a segregation unit that serves a variety of purposes but mainly houses the mentally ill and vulnerable inmates. Neither party suggests that HU-7 is relevant to this case.

On April 18, 2013, plaintiff was scheduled to be released from DS-2 and transferred to Housing Unit 8 (HU8) in general population. When Officer James informed plaintiff that he would be moving to HU8 into a double cell with a cellmate, plaintiff refused to move to HU8 and be double celled. Officer James notified a Security Supervisor of plaintiff's refusal to move

---

[3] Neither party explains what the term "boat" means in this context, but it does not appear to be relevant to the issues in this case.

[4] At the end of his responses to defendant's proposed findings of fact, plaintiff discusses a "no kneel" restriction that he was given in August 2013, and defendant's failure to abide by that restriction. Dkt. 25, at 4. However, these allegations did not appear in plaintiff's complaint (the events complained of occurred after he filed the complaint) and at this late date in the proceedings it would be unfair to defendant to allow plaintiff to amend his complaint to include a brand-new claim regarding the "no kneel" restriction.

and then escorted plaintiff to DS-1, where he was placed in TLU by Lieutenant Nicholas Bredemann pending investigation of a conduct report for disobeying orders.[5] Inmates refusing to leave DS-2 are regularly moved to a more restrictive status, DS-1, to deter them from getting major conduct reports yet remaining in a "step-down" segregation unit. Ultimately, Officer James issued plaintiff a conduct report for disobeying orders. Plaintiff spent several months in DS-1.

All beds in DS-1 are at a lower height—6 inches from the floor to the bottom of the frame; with the thick mattress, the height reaches 8 inches or more from the floor to the top of the mattress.[6] By comparison, DS-2 bunk heights are 16 inches from the floor to the bottom of the frame. With the thick mattress, the heights reach 18 inches or more. The DOC uses lower bunks for security reasons. A lower bunk height prevents inmates from sliding under the bunk and barricading themselves to either fight with staff or prevent observation of the inmate during regular intervals on the unit. There have also been incidents of inmates engaging in self-harm using the frame of the bed as a mechanism, which the lower bunk height is intended to prevent.

At some point after plaintiff was transferred to DS-1 on April 18, 2013, he made a complaint that he had a medical "no floor" restriction and that the lower bunks violated that restriction. Although the parties do not explain the exact timing of this complaint, from plaintiff's medical records, it seems that plaintiff complained on April 23, 2013, by filing an "Interview/Information Request" stating in part "could you please inform Unit Manager Melby

---

[5] The parties dispute whether defendant ordered plaintiff's move to DS-1 or whether defendant was even aware of plaintiff's placement, but these issues are irrelevant. Plaintiff does not suggest that defendant had knowledge of plaintiff's physical problems in DS-1 until plaintiff complained about them around April 23, 2013.

[6] There is one DS-1 cell that has a higher bunk, but that cell is used for inmates placed on "observation" status and for handicapped inmates. Neither of these conditions applied to plaintiff.

and Capt. Morgan that I have . . . no floor restriction . . . . in just two days my left knee has [swollen to] twice the size of my right knee." Dkt. 22-1, at 7. Plaintiff states that defendant met with him on April 24, 2013, "viewed [his] swollen left knee . . . and at the same time read medical records about his knee [and] lower back condition. And was informed by [plaintiff] that the swollen knee and excruciating back pain along with sciatic nerve pain was solely caused by the DS-1 extremely low bed. [Defendant] stated to [plaintiff] that if he do not double he will remain in DS-1, [defendant] then left for vacation the next day." Dkt. 27, at 20, ¶ 63. However, plaintiff does not dispute that after plaintiff's complaint, defendant "addressed his concerns with Health Services Unit staff and was informed that DS-1 beds are not considered a 'floor' placement, so his restriction was not violated and he could remain in DS-1." *Id*. at 13, ¶ 44.

While in DS-1, plaintiff had multiple communications with medical personnel. Plaintiff states that "[w]hile in DS-1 medical staff increased [his] pain pill intake from 'when-needed' to several pain pills every day." *Id*. at 13, ¶ 45. Plaintiff's medical records show that on May 3, 2013, plaintiff filed an "interview/information request" form asking about his ibuprofen prescriptions, which he now needed because of his increased pain from the low DS-1 bunk. A nurse responded the same day stating that plaintiff's ibuprofen prescriptions had expired in December 2012 and that "[i]f you feel you need to be seen on sick call submit a [health service request]." Dkt. 22-1, at 6. On May 13, 2003, plaintiff filed another information request form asking for another copy of his "special needs form" noting his "no floor" restriction. The nurse responded by sending him a copy of the form. *Id*. at 5. On September 29, 2013, plaintiff was seen by medical staff on "sick call" pursuant to plaintiff's complaints of ongoing back pain. Plaintiff was given ibuprofen in liquid form (ibuprofen is not available in DS-1 in pill form) and was told to notify the Health Services Unit "if no improvement or if condition worsens." *Id*. at 1-2.

5

In December 2013, plaintiff was moved to DS-2.

According to defendant's expert, Meredith Mashak, a registered nurse who works as the Health Services Unit Manager at CCI (but who apparently had no involvement in the events of this case), "[plaintiff's placement in the DS-1 cell was appropriate because [plaintiff] was not on the floor and the elevation of the lower bunk was sufficient to assist him to a standing position." Dkt. 27, at 17, ¶ 56. Mashak does not believe that placing plaintiff in a DS-1 cell with the lower bunk "posed a substantial risk to [plaintiff's] physical health or safety." *Id*. at 18, ¶ 57.

## ANALYSIS

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper. *Celotex*, 477 U.S. at 322.

Plaintiff brings a claim against defendant for violating his Eighth Amendment rights against cruel and unusual punishment by placing and keeping him in the DS-1 unit with a low bunk even though that caused him severe pain and caused his knee to swell.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A "serious

medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Plaintiff states that he suffers from back, leg, and knee pain and that his conditions are exacerbated by having to use a low bunk. He has thus shown that he had a serious medical need. The fact that plaintiff was given a "no floor" restriction corroborates plaintiff's allegation of a serious medical need.

At the heart of this case is whether defendant acted with deliberate indifference by keeping plaintiff in DS-1 even after plaintiff complained that the low bunk exacerbated his back, leg, and knee problems. To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Defendant says that he could not have been deliberately indifferent because he "looked into the issue and was told by medical staff that [plaintiff] could remain in DS-1." Dkt. 20, at 6.

Neither party provides particularly specific proposed findings of fact regarding exactly what plaintiff told defendant, or what defendant told medical staff. There do not appear to be

7

written records of either discussion. Nevertheless, the record is clear enough to establish that defendant's response to plaintiff's complaints cannot constitute deliberate indifference.

Defendant states that "at some point" plaintiff "made a complaint that he had a medical 'no floor' medical restriction and that the lower bunks violated that restriction." Dkt. 27, at 12, ¶ 43. Although the parties do not identify the exact timing of this complaint, from plaintiff's medical records, it seems that plaintiff complained on April 23, 2013, by filing an "Interview/Information Request" stating in part "could you please inform Unit Manager Melby and Capt. Morgan that I have low bunk and no floor restriction . . . . in just two days my left knee has [swollen]." Dkt. 22-1, at 7. Plaintiff states that defendant met with him on April 24, 2013, after which (he does not explain when) defendant addressed "his concerns" with medical staff, who told him that "DS-1 beds are not considered a 'floor' placement, so his restriction was not violated and he could remain in DS-1." Dkt. 27, at 13, ¶ 44. This would usually be sufficient to show that defendant did not act with deliberate indifference because he referred plaintiff's problem to medical staff. *See, e.g.*, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As . . . a host of . . . cases make clear, the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so."); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("Curll did not disregard Johnson's complaints. He investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions."); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns.").

Plaintiff argues that defendant's efforts were insufficient because defendant focused on the restriction itself (whether the DS-1 bunks qualify as "a "floor" placement) and thus missed the key issue: the actual physical injury and pain plaintiff suffered from the low bunk. Plaintiff states that "[defendant] failed to mention that [plaintiff's] complaint clearly address[es] the fact that the extremely low bunk in DS-1 has cause[d] increasing pain in lower back, along with sciatic nerve pain, and that his left knee has swollen to the size of a grapefruit with excruciating pain." Dkt. 27, at 12, ¶ 43. Plaintiff concedes that he is unaware what defendant said to medical staff, but he contends that "it is apparent [defendant] did not mention that the excruciating pain [plaintiff] had address[ed] in his complaint." *Id*. at 13, ¶ 44.

Although plaintiff admits that he does not know whether defendant discussed with medical staff the question of whether DS-1 beds exacerbated plaintiff's pain, it is a reasonable inference that defendant did not discuss this issue given defendant's vague proposed findings about the conversation. However, regardless of the precise focus of defendant's conversation with medical staff, the only reasonable takeaway from the conversation is that medical staff thought the low bunks in DS-1 adequately served the medical purpose of the "no floor" restriction—avoiding situations where it would be painful (or impossible) for prisoners to get into and out of extremely low beds. Thus, defendant investigated the problem and relied on medical professionals to determine whether it was appropriate for a prisoner with the restriction to use the low bunk. The Eighth Amendment does not require a correctional officer to advocate on behalf of an inmate with medical staff; it only prohibits deliberate indifference.[7]

---

[7] Plaintiff includes a proposed finding of fact that defendant went on vacation the day after meeting with plaintiff. He does not explain whether he means to say that plaintiff intentionally delayed meeting with medical staff about the "no floor" restriction, but he does not make that argument. In any case, it seems clear from defendant's meeting with medical staff, as well as medical staff's interactions with plaintiff in May 2013, that the medical staff did not think it was appropriate to give plaintiff a higher bed, so it is unclear whether or how plaintiff was

Plaintiff argues, apparently, that defendant was deliberately indifferent because in inquiring about the restriction, he did not communicate that plaintiff was *actually* in pain, which could have changed the calculus of the medical professionals consulted by defendant. But plaintiff himself had direct access to medical staff, and indeed communicated with medical staff about how to treat his problems. Plaintiff states that "[w]hile in DS-1 medical staff increased [his] pain pill intake from 'when-needed' to several pain pills every day." Dkt. 27, at 13, ¶ 45. Plaintiff argues that this "verif[ies] that [defendant] did not mention [plaintiff's] pain and suffering was due to the extremely low DS-1 beds," *id.*, but that does not follow. If anything, it shows that medical staff *was* in fact aware that plaintiff was suffering pain but that medical staff chose to treat plaintiff with medication, instead of reconsidering the use of DS-1 beds. Moreover, there is no evidence or suggestion that defendant (or anyone else) ever blocked plaintiff from communicating with medical staff.

In short, plaintiff fails to show that defendant acted with deliberate indifference, because it was not defendant's job to assess plaintiff's medical fitness for the low DS-1 bunks. Defendant appropriately consulted with and relied on medical staff to make that determination, and it is clear that they believed the proper course of action was to give plaintiff pain medication rather than reconsider the use of DS-1 beds.[8] Accordingly, I will grant defendant's motion for summary judgment and direct the clerk of court to enter judgment in defendant's favor.

---

harmed by defendant's vacation.

[8] Plaintiff did not name any of the medical staff as defendants. Even if he had, it would be difficult to show that they acted with deliberate indifference when they provided him with treatment, even if it was not the treatment plaintiff wanted. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) ("a mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference.") (internal quotations omitted). This treatment decision is supported by Nurse Mashak's expert testimony that the low bunks did not "pose[] a substantial risk to [plaintiff's] physical health or safety." Dkt. 27, at 18, ¶ 57.

Defendant also raises a qualified immunity argument, but I need not address that issue because the deliberate indifference claim has been resolved on the merits in defendant's favor. *See Mucha v. Village of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011) (when there is no constitutional violation, defendant "do[es] not require the additional protection of qualified immunity.").

ORDER

IT IS ORDERED that:

1. Plaintiff Gable D. Hall's motion for the court's assistance in recruiting him counsel, Dkt. 30, is DENIED.

2. Defendant David Melby's motion for summary judgment, Dkt. 19, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 7th day of January, 2015.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge