IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GABLE D. HALL,

                        Plaintiff,

v.

DAVID MELBY,

                        Defendant.

ORDER

13-cv-385-jdp

---

*Pro se* plaintiff Gable D. Hall brought this case under 42 U.S.C. § 1983 contending that defendant Corrections Unit Supervisor David Melby acted with deliberate indifference to his medical needs by keeping him in a bunk that was too low, which aggravated plaintiff's back, hip, and knee problems. In a January 7, 2015 order, I granted defendant's motion for summary judgment, stating that the undisputed facts showed that defendant appropriately deferred to medical personnel's treatment of plaintiff's health problems. Currently before the court are three motions filed by plaintiff: a renewed motion for the court's assistance in recruiting him counsel, a "motion to amend related material fact," and a motion for reconsideration of the summary judgment order.

A.      **Recruitment of Counsel**

I denied plaintiff's previous motion for recruitment of counsel in part because plaintiff failed to show that he made reasonable efforts to find a lawyer on his own and was unsuccessful. Dkt. 31, at 1 (quoting *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992)). Plaintiff now submits two rejection letters from area law firms, which is fewer than the usual three this court requires, but at least shows he has made an attempt.

I will deny plaintiff's motion because he again fails to show that "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Plaintiff suggests that his inability to litigate the case can be seen in at least two areas: he cites to the portion of the January 7 order in which I stated, "Plaintiff does not fully comply with this court's procedures for briefing summary judgment motions, but he does a *reasonable* job of setting forth the basis for his Eighth Amendment claim." Dkt. 31, at 1-2 (emphasis added). Plaintiff thinks that his "'reasonable' job is not grounds to deny appointed counsel, instead should be the main reason appointed counsel is needed, because 'reasonable' is not considered a 'sufficient' job." Dkt. 37, at 1.

Plaintiff misunderstands what I meant by this statement. What I intended to convey was that plaintiff did an adequate job of presenting his version of the events at issue even though he did not meet the technical requirements of this court's summary judgment procedures. For instance, he did not support each of his proposed findings of fact with a citation to admissible evidence. Nor did he provide an affidavit in which he declared under penalty of perjury that the evidence he presented from his firsthand perspective is true. However, I accepted plaintiff's version of the facts despite these technical errors. *See* Dkt. 31, at 2 n.2. The problem for plaintiff is that even accepting his version of the facts, he failed to show that defendant acted with deliberate indifference.

Plaintiff also states that he has "slowly increasing Alzheimer's disease." Dkt. 37, at 1, which caused him to forget to ask the court to amend the complaint to include a claim that defendant forced plaintiff to kneel on the floor even after he was given a "no kneel"

2

restriction in August 2013.[1] But he did not support his assertion with any supporting medical documentation of his Alzheimer's. The court directed plaintiff to submit such documentation, Dkt. 43. In his response, Dkt. 44, plaintiff makes clear that he has not been formally diagnosed with Alzheimer's. Rather, he states that he has experienced bouts of forgetfulness since 1989, and that a doctor (in 1989) told him that these bouts "sounded like the threshold of Alzheimer's disease." *Id*. This decades-old statement is simply insufficient to establish a bona fide medical need, and plaintiff self-diagnosis seems quite unlikely given the usual span of symptoms for those suffering from Alzheimer's. *See, e.g.*, Alzheimer's Association, *Stages of Alzheimer's*[2] ("On average, a person with Alzheimer's lives four to eight years after diagnosis, but can live as long as 20 years, depending on other factors."); National Institute on Aging, *About Alzheimer's Disease: Alzheimer's Basics*[3] ("The time from diagnosis to death varies—as little as 3 or 4 years if the person is older than 80 when diagnosed to as long as 10 or more years if the person is younger."). I will deny his motion for recruitment of counsel.

B.   **Motion to Amend Complaint**

In his "motion to amend related material fact," plaintiff seeks to amend his complaint to include the "no kneel" restriction claim mentioned in his motion for recruitment of counsel. *See* Dkt. 40. This might alternately be construed as a motion for reconsideration of

---

[1] Plaintiff raised this claim in his summary judgment materials, but as I stated in the January 7, 2015 order, "[T]hese allegations did not appear in plaintiff's complaint (the events complained of occurred after he filed the complaint) and at this late date in the proceedings it would be unfair to defendant to allow plaintiff to amend his complaint to include a brand-new claim regarding the 'no kneel' restriction." Dkt. 31, at 3 n.4.

[2] http://www.alz.org/alzheimers_disease_stages_of_alzheimers.asp (last visited Sept. 14, 2015)

[3] http://www.nia.nih.gov/alzheimers/topics/alzheimers-basics (last visited Sept. 14, 2015)

my ruling in the summary judgment order that plaintiff could not amend his complaint to include the claim at that point of the proceedings.

Had I granted plaintiff counsel based on his memory problems, I might have allowed him to amend his complaint to include the claim he had neglected to raise before summary judgment. But because plaintiff fails to persuade me that his failure to bring this claim was caused by illness, there is no reason to allow him to bring a new claim at this late date, so I will deny the motion.

C.    **Motion to alter or amend judgment**

I will construe plaintiff's motion for reconsideration as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). A court may grant a Rule 59 motion only where the moving party demonstrates "a manifest error of law or present[s] newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Plaintiff raises several arguments, but none of them demonstrates a manifest error of law or presents newly discovered evidence, so I must deny his motion.

Plaintiff again states that defendant forced him to kneel on the floor despite his "no kneel" restriction, but as stated above, this claim is not part of the case.

Plaintiff argues that I erred in focusing on whether plaintiff's "no floor" restriction[4] was violated rather than the actual pain and knee swelling plaintiff was suffering that he believes was caused by his low bunk. However, I rejected this very line of argument at summary judgment:

---

[4] I understand a "no floor" restriction to be a status given to inmates with medical concerns, like back or knee pain, to keep the inmate off the actual floor due to the difficulties inmates with these medical issues may have in getting to a standing position from the floor.

4

> Plaintiff argues that defendant's efforts were insufficient because defendant focused on the restriction itself (whether the DS-1 bunks qualify as a "floor" placement) and thus missed the key issue: the actual physical injury and pain plaintiff suffered from the low bunk. . . .
>
> Plaintiff argues, apparently, that defendant was deliberately indifferent because in inquiring [with prison medical staff] about the restriction, he did not communicate that plaintiff was *actually* in pain, which could have changed the calculus of the medical professionals consulted by defendant. But plaintiff himself had direct access to medical staff, and indeed communicated with medical staff about how to treat his problems. Plaintiff states that "[w]hile in DS-1 medical staff increased [his] pain pill intake from 'when-needed' to several pain pills every day." Dkt. 27, at 13, ¶ 45. Plaintiff argues that this "verif[ies] that [defendant] did not mention [plaintiff's] pain and suffering was due to the extremely low DS-1 beds," *id.*, but that does not follow. If anything, it shows that medical staff *was* in fact aware that plaintiff was suffering pain but that medical staff chose to treat plaintiff with medication, instead of reconsidering the use of DS-1 beds. Moreover, there is no evidence or suggestion that defendant (or anyone else) ever blocked plaintiff from communicating with medical staff.
>
> In short, plaintiff fails to show that defendant acted with deliberate indifference, because it was not defendant's job to assess plaintiff's medical fitness for the low DS-1 bunks. Defendant appropriately consulted with and relied on medical staff to make that determination, and it is clear that they believed the proper course of action was to give plaintiff pain medication rather than reconsider the use of DS-1 beds.

Dkt. 31, at 9-10.

Plaintiff argues that I allowed irrelevant expert testimony from Nurse Meredith Mashak, who stated that the DS-1 bunk was appropriate for plaintiff despite his "no floor" restriction. However, I did not rely on this testimony in ruling against plaintiff.[5] Instead I

---

[5] I noted in the summary judgment opinion that Mashak was not involved in the events at issue in this case, and discussed her expert testimony only in a footnote. Dkt. 31 at 6 and 10 n.8.

concluded that defendant was not deliberately indifferent to plaintiff's knee problems because he checked with medical personnel to make sure that the DS-1 bunks would not cause problems for prisoners with low bunk restrictions, and he did not prevent plaintiff from raising the issue of his knee problems with medical staff.

Plaintiff argues that defendant did not actually talk to medical personnel about plaintiff's problems until 2014, several months after plaintiff's complaint, but this is not supported by any evidence (plaintiff explicitly stated that he did not know precisely what defendant discussed with medical personnel). Plaintiff seems to be saying that defendant must be referring to a discussion he had with Mashak, which could not have happened until 2014, after Mashak began working at the prison. The only reasonable inference from the evidence that is defendant discussed plaintiff's problems with other medical personnel while plaintiff was still in DS-1.

Plaintiff also argues that prison medical staff did not have the authority to override defendant's decision to have plaintiff placed in DS-1, but he did not provide any evidence suggesting that this is the case. And in any event, medical's staff's authority to override defendant is irrelevant. Had there been evidence that defendant ignored warnings from medical staff that plaintiff's health was in danger in DS-1, plaintiff's claim would likely have gone to trial. But there was no such evidence presented in this case. Instead, the evidence showed that defendant properly deferred to medical staff and was thus not deliberately indifferent.

ORDER

IT IS ORDERED that:

1. Plaintiff Gable D. Hall's motion for recruitment of counsel, Dkt. 37, 44, is DENIED.

2. Plaintiff's "motion to amend related material fact," Dkt. 40, is DENIED.

3. Plaintiff's motion to alter or amend the January 7, 2015 judgment, Dkt. 33, is DENIED.

Entered September 18, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge